J. A. WILLOUGHBY, *Receiver of the Capitol National Bank of Guthrie, Oklahoma,* v. J. E. BALL.

(Filed June 13, 1907.)

1. PROMISSORY NOTE—Suretyship—Defence. Where one executes a promissory note for accomodation of another, and the payee advanced money thereon to such third party, the maker, when sued, cannot defeat recovery on the ground that there was no consideration for its execution.

2. SAME—Same—Evidence. While parol evidence will be received to explain that a promissory note was executed by the maker for the accommodation of another, or to be held as collateral security it caniot be received to defeat recovery thereon where the payee on the strength of the execution and delivery of such note, and at the request of the maker, extended credit to a third party.

3. SAME—Same—Equity—Set off. Where the president of a bank desiring to increase the cash reserve thereof, without showing an increase in the liabilities, borrows money from another bank in his individual name, executing his own promissory note therefor, leaving the money so borrowed with the bank to which the note was given to the credit of his own bank, and the bank from which the money was borrowed fails before the maturity of the note. and when the other bank had on deposit with such failing bank more than enough money to pay the note, the maker of the note cannot maintain an action in equity to compel the receiver of the failing bank to off-set the deposit of the other bank against the note, and to secure a cancellation thereof, upon the theory that

the debt for which the note was executed was the debt of the bank he represented, without alleging in his bill that the bank for whose benefit the note was executed was insolvent, as otherwise, he could pay the note and recover the amount back in an action at law, for equity will not afford relief where a party has an adequate remedy at law, either affirmative or defensive.

4. SAME—Same—Evidence. When one executes a note under the circumstances stated in the last paragraph of this syllabus and, at the time of such execution, the maker of the note explained to the officers of the bank making the loan that the bank for whose benefit the loan was made was to pay the same, and it was orally agreed between him and the officers of the bank making the loan that he should not be held responsible on the note, but that it should be treated as the debt of the other bank, such agreement or conversations, except that part agreeing not to hold the maker of the note, may be proven on the trial for the purpose of establishing that the maker of the note executed it as an accommodation or to be held as collateral security but not to defeat recovery from him thereon.

5. SAME—Principal and Surety—Set off. While a principal debtor may set off a debt due from the plaintiff to him in an action against him and his surety jointly, the surety cannot do so on his own motion, unless he shows the insolvency of his principal, and his inability to obtain relief either in an action brought by him, or as a defense to an action on the note; and, even then, the principal debtor should be made a party to the suit.

6. PLEADING AND PRACTICE—Petition—Objection to Introduction of Evidence. Where a petition fails to state a cause of action in favor of the plaintiff, the trial court should sustain an objection to the introduction of evidence thereunder.

7. SAME—Demurrer to Evidence—Sustained, When. Where one is sued upon a promissory note, and, on the trial, fails to prove any defense a demurrer of his evidence should be sustained and judgment rendered in favor of the holder of the note.

8. PROMISSORY NOTE—Agency—Liability of Maker. Where the president of a bank borrows money for his bank, executing his personal note for the same, he will be personally bound thereon, even though the payee of the note was informed at the time it loaned the money and took the note that the maker was acting only as agent for his bank.

(Syllabus by the Court.)

*Error from the District Court of Logan County; before John L. Pancoast, Trial Judge.*

*Flynn & Ames,* for plaintiff in error.

*Dale & Bierer* for defendant in error.

Opinion of the court by

BURWELL, J.:  J. E. Ball commenced this action in the district court of Logan county, alleging that the Capitol National Bank of Guthrie, closed its doors and ceased to do business on or about April 4th, 1904, that said bank, at the commencement of this action was in the hands of one J. A. Willoughby, as receiver: that the plaintiff, at all of the times mentioned in the petition, was the president of the Bank of Meridian, and owned forty-eight of the fifty shares of the capital stock of said bank; that on or about March 12th, 1904, the plaintiff, representing the Bank of Meridian, borrowed from the Capitol National Bank the sum of two thousand dollars, due April 12th, 1904, for which he executed his individual promissory note, which drew two per centum per annum, and the proceeds of the loan were placed to the credit of the Bank of Meridian, and were never withdrawn from the Capitol National Bank; that the plaintiff was authorized by the board of directors of the Bank of Meridian to make this loan in his own name as the reserve of the bank was low, and it was desired to show a larger reserve without showing an increase in the bank's liabilities; that the reasons for the loan and the fact that it was not for the benefit of Ball, but for the benefit of the Bank of Meridian, was made known to Mr. Billingsley, the president of the Capitol National Bank, at the time the loan was made; that, as an individual, the plaintiff never kept any deposit in the Capitol National Bank, or borrowed any money for his own benefit; that on April 12th, 1904, eight days after the Capitol National Bank failed, the Bank of Meridian requested the national bank examiner, who was then in

charge of the Capitol National Bank, to charge said note of Ball's to the account of the Bank of Meridian, cancel said note and surrender the same; and that the Bank of Meridian had on deposit at said time with the Capitol National Bank the sum of two thousand nine hundred seventy-five and 25-100 dollars; but that the bank examiner refused to make said charge and surrender said note. The petition then prays for a cancellation of the note and that the account of the Bank of Meridian, to the amount of the note, be offset against it.

The defendant, as receiver, entered his appearance and filed an answer, which was a general denial, and a cross petition praying for judgment against Ball on the note. The Bank of Meridian, although it entered its appearance, filed no pleading in the case. The plaintiff, Ball, then filed a reply, which was a general denial, and then pleaded affirmatively as a defense to the cross-petition of the defendant on the note, the agreement between him and th Capitol National Bank, wherein it was understood that the loan was to the Bank of Meridan and not to Ball.

When the case came on for trial, the defendant objected to the introduction of any evidence by the plaintiff for the reason that the petition failed to state a cause of action. This objection was overruled by the court, and an exception saved by the defendant. Evidence was then introduced by the plaintiff, and when he had rested the defendant receiver demurred to the evidence. ·This demurrer was by the court overruled, and exception saved by the defendant, and judgment entered by the court cancelling the note. The receiver prosecutes error to this court. The first question

to be decided is: Should the objection of the defendant to the introduction of any evidence under plaintiff's petition, have been sustained? We have examined the petition carefully, and do not find a single ground stated therein on which the plaintiff could invoke the aid of a court of equity. There is no controversy between the plaintiff and the Bank of Meridian, and no alleged danger of the dividends on the deposits of the Bank of Meridian in the Capitol National Bank, being accepted by the former bank, and the plaintiff placed in a worse position by reason thereof. The pleadings and evidence show that the plaintiff owns ninety-six per cent. of the stock of the Bank of Meridian, and that he controls the policy of the same.

If the matters which the plaintiff sets up in his petition can avail him at all, they can be pleaded as a defense to an action on the note by the receiver of the Capitol National Bank. The petition fails to show any reason or state of facts which would be likely to prevent the plaintiff from making as complete a defense against the note in an action at law as in the present suit in equity. We had occasion to consider the rights of the maker of a note to maintain an action to cancel it in an equitable action in the case of *Trimble v. Minnesota Thresher Co.,* 10 Okla. 578, in which it was held that if the maker of a note had a defense against such note, if sued on the same in an action at law, he would have to wait until so sued, unless he pleaded that the payee of the note was insolvent and threatened or was about to transfer the note before maturity to an innocent party, thus depriving the maker of his rightful defense against the same.

In Pomeroy's work on Equity Jurisprudence, vol. 2, page 1298, sec. 914, it is said:

"The doctrine is settled that the exclusive jurisdiction to grant purely equitable remedies, such as cancellation, will not be exercised, and the concurrent jurisdiction to grant pecuniary recoveries does not exist, in any case where the legal remedy, either affirmative or defensive, which the defendant party might obtain, would be adequate, certain and complete."

If equity will not grant relief in case of fraud, much less will it aid one where the condition of his liabilities is the result of his own planning or assent. See also *Buzard v. Houston,* 119 U. S. 347, and Cyc. vol. 6, pages 286-290. And, again, the defendant was entitled to a trial by jury on the issues raised by the petition. *Black v. Jackson,* 177 U. S. 349.

The objection to the introduction of evidence should have been sustained. But notwithstanding this erroneous ruling, has the defendant suffered by reason of such mistake?

The defendant, by seeking to recover on the note, in his cross-petition brought into the action an issue which constituted an action at law, and for the trial of which the parties were entitled to a jury. Recognizing this right at the commencement of the trial, a jury was affirmatively waived and the case tried to the court. The defendant did not dismiss his cross-petition and whatever rights, as receiver, he had were adjudicated in the trial of the case. If the defendant, when his objection to the introduction of evidence under plaintiff's petition was overruled, had dismissed his cross-petition, then there would have been nothing

for this court to do but to dismiss the action; but, not having done so, what are his rights, and in what legal position is he placed?

The plaintiff introduced his evidence and the defendant cross-examined the witnesses, and when the plaintiff rested a demurrer to the evidence was filed, which was overruled by the court. The defendant then refused to introduce any evidence and judgment was rendered in favor of the plaintiff cancelling the note. We will consider this evidence and its force as applied to the issues raised by the cross-petition and reply.

If the trial court had sustained the objection to the introduction of evidence under the petition, such ruling would simply have eliminated that pleading from the case, and the trial would have proceeded upon the cross-petition and reply. If we recognize as done that which should have been done, what is the result? The cross-petition is a suit upon a written instrument, the execution of which is not denied under oath, but is admitted. The reply, as a defense, alleges that the consideration for the note was a loan to a third party, and that it was understood at the time of its execution that the debt was not that of the plaintiff but of such third party, as we shall notice more fully later in this opinion. Without now indicating the force of this defense to a recovery on the note, we will suggest that, in the absence of proof, the receiver was entitled to judgment against the plaintiff, because he had executed the note personally. It appeared to be his personal obligation, and the burden was on him to show some state of facts which would entitle him to have the balance due from the Capitol National Bank to

the Bank of Meridian offset against the note in question.
The receiver, in the first instance, not being required to offer
any evidence, the plaintiff offered his evidence in the same
order that he should have done if the petition had been dis-
missed; and evidence once introduced upon a trial is in
the case for all legitimate purposes, and even though the
plaintiff was not entitled to introduce it under his petition,
he could properly offer at least a portion of it at that very
time in support of his reply: Therefore, so much of the
evidence as was admissible under the issues raised by the
cross-petition and the reply will be considered in determin-
ing as to whether or not the judgment of the court should
have been different if it had ruled differently on the peti-
tion, because errors which are purely technical and do not
affect the substantial rights of the parties will be disregarded.

Section 4344, of vol. 2, of Wilson's Ann. Stats. of
Oklahoma, of 1903, provides:

"The court, in every stage of action, must disregard any
error or defect in the pleadings which does not affect the
substantial rights of the adverse party; and no judgment
shall be reversed or affected by reason of such error or
defect."

See also *Lynch v. Lumber Co.*, 5 Okla. 628; *Brook v.
Bayless*, 6 Okla. 568.

Having decided the questions of practice presented by
the record, and also that the plaintiff's petition failed- to
state a cause of action in equity, there still remains the
paramount question: Is the receiver entitled to recover
from the plaintiff on the note? A correct decision on the
demurrer to the evidence will settle this point; therefore, we

will consider the ruling of the trial court in relation thereto. All of the evidence offered by the plaintiff which, under the law, was admissible under the allegations of his reply, will be considered in this case and weighed against the legal force of the demurrer. But counsel for the appellant insist that incompetent evidence was admitted on the trial in behalf of plaintiff, and therefore we must deicde what evidence, if any, was admitted by the court which should have been excluded. It is said that the testimony of Ball and Billingsley, relating to conversations had between them at the time the note was executed, was incompetent in that it tended to vary the terms of a written instrument. We do not concur in this position. Ball did not deny that he executed the note, nor did he attempt to in any way change the terms thereof. He simply sought to explain that, while he personally executed the note, it was for money advanced to the bank of Meridian, and that primarily it should pay the debt. This he had a right to do, as it cannot longer be contended with due respect to the adjudicated cases and text-writers, that one may not by parol evidence show that he is merely a surety, although his name is signed to the note as principal.

Suppose Ball had executed the note to the Bank of Meridian for the purpose of accommodation, and it had endorsed it over to the Guthrie National Bank as collateral security for the two thousand dollar loan; if sued upon it by the Capitol National Bank, and the Bank of Meridian were also a party, could not Ball have shown, under proper pleadings and certain circumstances, that the note was executed by him without consideration flowing to him, but as

an accommodation for the Bank of Meridian, if the Capitol National Bank had money in its hands belonging to the Bank of Meridian sufficient to pay itself? If so, has he deprived himself of this privilege by executing the accommodation note, (conceding the correctness of his testimony) direct to the Capitol National Bank? Reason compels a negative answer. But, notwithstanding his right to show the circumstances under which the note was executed when properly pleaded, the reply sets up no state of facts which amounted to a defense to the cross-petition. It alleges that the loan was to the Bank of Meridian; that the note was executed wholly for and on behalf of said bank; that the two thousand dollars was placed to the credit of said bank, as more fully set out in plaintiff's petition; that the plaintiff never received any consideration for the making of the note; that the Bank of Meridian was to pay said note, and that it was not to be paid by the plaintiff; and that all of these arrangements were made on behalf of the Capitol National Bank through its president, Charles E. Billingsley.

While it is true that the strict rule laid down in the case of *Keokuk Falls Improvement Co. v. Kingsland, Douglas Manufacturing Co.,* 5 Okla. 32, insisted upon by appellant, has been modified by the case of *Janes v. Citizens Bank of North Enid,* 9 Okla. 547, we cannot hold that Ball may, by parol evidence defeat his liability on this note; because it is his contract, and the presumption is, under his own testimony, that it partially, at least, influenced the making of the loan. We have examined the case of *Hanover National Bank of New York v. First National Bank of Burlingame, Kans.* 109 Fed. 421, cited by appellee, and find nothing

in that decision which will relieve the plaintiff from liability. It is true that the circumstances of that case were virtually the same as this, except that the issue was between the two banks; the bank from which the money was borrowed having charged the amount of the note up to the account of the other bank, which insisted that the note executed by Sheldon (who acted for the Kansas bank in borrowing the money) was his individual obligation and not that of the bank. The evidence established that the money was borrowed for the bank and not for Sheldon, and, as will be seen, the suit was not against Sheldon on the note, but the contest was over the right of the New York bank to charge up the amount of the note, the proceeds of which had been received by the Kansas bank, to it. It is not here intimated that the receiver could not recover the amount of the note in controversy from the Bank of Meridian if he so desired; but it is also equally well settled that one may collect collateral held to secure the payment of an obligation without first suing the principal debtor. Ball cannot deny his liability on the note, or that he executed it with the intention that the bank should hold it at least as collateral to the loan to the Bank of Meridian. Otherwise, why did he give it at all? What excuse can he urge that will appear reasonable to honest, thinking men? His excuse that he desired to make the cash reserve appear larger without increasing the apparent liability of his bank, cannot defeat a recovery by the loaning bank for the debt, nor can it be urged by him to defeat a recovery or as offering an excuse or justification for executing the note in his own name. At least his act, under his own statements, was intended to

deceive the bank examiner, and as was said by Judge Ross under similar circumstances, in the case of *Pauly v. O'Brien,* 69 Fed. 460.

"It is sound reason, as well as pure justice to leave him bound who has bound himself."

In that case it is further said:

"Where a person, at the solicitation of national bank officers, gave his note to the bank to take up the note of a stranger, for the purpose, as stated by the officers, of getting the old note 'out of the past due notes: *Held* That the maker of the new note was liable to the receiver on a renewal of the note, whether the transaction was a real one, or a mere trick to make it appear to the government and the creditors and stockholders that the bank had a valuable asset, which it in fact did not have."

Attention is also directed to two other decisions, holding that he cannot change his liability to the payee by parol evidence. Mr. Commissioner Ames, speaking for the supreme court of Nebraska, in the case of *Dockarty, et al. v. Tillotson,* 89 N. W. 1050, said:

"An agent who contracts in his own name with respect to matters within the scope of his agency is personally obligated, although the fact of such agency is known to the opposite party."

In *Miler el al. v. Early,* 58 S. W. 789, the court of appeals of Kentucky laid down the rule in the following language:

"Where an agent made a purchase in his own name, and so signed the contract, he was personally bound, though the seller knew that he was acting only as agent."

Many of the authorities go even further, holding that where the maker of the note signs the same as president or secretary or director of a corporation, naming it after the words "President, etc.," it is a personal obligation and his agency cannot be shown by parol evidence. We shall not comment upon that doctrine further than to refer to the cases of *Keokuk Falls Imp. Co. v. Kingsland, Douglas Mfg. Co.,* and *Janes v. Citizens Bank of North Enid, supra.*

The appellant also cites the case of *Scott v. Armstrong,* 146 U. S. 499, as authority not only justifying the plaintiff in maintaining his petition in equity, but also as requiring the deposit of the Bank of Meridian in the Capitol National Bank to be offset against the plaintiff's note. Perhaps it will be well for us to notice briefly just what was involved in the case referred to. Levi Scott was the cashier of the Farmers & Merchants Bank, and he, in his individual name, executed a note to the Fidelity National Bank of Cincinnati, Ohio, for $10,000, dated June 6, 1887, payable ninety days after date. This note was endorsed by the Farmers & Merchants Bank. After this note had been executed and delivered, the Fidelity Bank failed and David Armstrong was appointed receiver of the same. Armstrong brought suit on the note joining Scott and the Farmers & Merchants Bank as defendants. Scott answered alleging that he executed the note for accommodation of the bank under an agreement that he should not be looked to for its payment. The Farmers & Merchants Bank pleaded the same facts as to Scott and then claimed a setoff to the amount of $8,809.94, which sum was on deposit with the Fidelity National Bank at the time it closed, in favor of the Farmers &

Merchants Bank, and was the balance of the proceeds of the note referred to, which had not been checked out by the Farmers & Merchants Bank. The defendant bank also pleaded a tender to the receiver, after the maturity of the note, of an amount equal to the difference between the amount of its deposit of $8,809.94, and the amount of the note and interest, and demanded its surrender, which the receiver refused to do, claiming the right to payment of the full amount of the note and interest, and refusing the set-off. On the trial, judgment was rendered against the defendants and they prosecuted a writ of error seeking a reversal.

While the writ of error was pending, a bill in equity was filed in the circuit court on behalf of the Farmers & Merchants Bank, and Scott against Armstrong as receiver, praying for an injunction against the judgment rendered on the note, and for the enforcement of the setoff. The case was in due time certified to the supreme court of the United States to answer certain questions, and that court considered both of these cases together, and held that Scott and the Farmers & Merchants Bank were not entitled to a setoff in the action of law on the note, because the rights of the parties were fixed at the time of the failure of the bank. and that, while the deposit of $8,809.94, was then due from the Fidelity Bank to the Farmers & Merchants Bank, the note was not due for some seventy-six days thereafter. However, Chief Justice Fuller, in writing the opinion, said that while Scott and the Farmers & Merchants Bank did not have a legal right to a setoff, yet equity would afford that relief.

It should, however, be borne in mind that not only Scott, but the Farmers & Merchants Bank were parties to each of these suits, and not only alleged the same state of facts, but were asking for the same affirmative relief. The bank admitted its primary liability on the note and prayed for relief in equity, and it was granted because the Fidelity National Bank was insolvent and without such relief, the Farmers & Merchants Bank would have suffered irreparable injury. But it was not held in that case that Scott alone could have compelled in equity a setoff. That question was not raised. The bank was entitled to it and was in court asking for that relief.

The Bank of Meridian, although made a party to this suit has filed no pleading and asked for no relief. Under the plaintiff's own allegations in his pleadings, the deposit in the Capitol National Bank was not his but was due to the Bank of Meridian.

We are aware that there are some cases holding that a surety or one standing in the relation of an endorser may, in equity, under such circumstances, when sued on a note, ask the benefit of a setoff of money due from the plaintiff to his principal. It is asserted also that if he can ask such relief as a defense, he may also ask it as plaintiff, although there are strong authorities to the contrary; but under the better authorities, before a surety, when sued, can set off a debt due from the plaintiff to his principal, he must both plead and prove that his principal is insolvent, and that should he be denied the offset, he cannot recover back from his principal the amount which he may be compelled to pay.

Willoughby, *receiver*, v. J. E. Ball.

In the case of *Richardson, et al. v. Penny*, 10 Okla. 32, this court, speaking through its chief justice, declared that:

"A cause of action sought to be pleaded as a setoff must exist in favor of all of the defendants against the plaintiff."

It is true that this rule is subject to certain exceptions, one of which is that where a number of persons are sued, some of which are principal debtors and others sureties, upon a showing to that effect, debts due from the plaintiff to the principal defendants alone may be setoff at the instance of such principal debtors. In the Am. & Eng. Enc. of Law, second edition, vol. 25 page 540, sec. 10, it is said:

"While it is a rule, under the requirement that a setoff must be between all the parties to the action, that a matter can be set off only when it is due to all of the defendants, yet when there are several defendants, one or more of them being the principal debtors and the rest merely sureties, this does not prevent a debt due to those of the defendants only who are principals from being set off against the plaintiff's demand against the principals and sureties together. Though the right has been denied, that this may be done is clearly established by the weight of authority and principle."

To the same effect are the following cases: *Harrison v. Henderson*, 4 Ga. 198; *Watterman v. Clark*, 76 Ill. 428; *Heinrod v. Baugh*, 85 Ill. 435; *Eugs v. Matson*, 11 Ill. App. 639; *Hayes v. Cooper*, 14 Ill. App. 490; *Reeves v. Chambers*, 67 Iowa. 81; *Spencer v. Almoney*, 56 Md. 551; *Robbins v. Brooks*, 42 Mich. 62; *Raymond v. Green*, 12 Neb. 215; *Woods v. Carlisle*, 6 N. H. 27; *Mahurin v. Pearson*, 8 N. H. 539; *Boardman v. Cushing*, 12 N. H. 119; *Concord v. Pillsbury*, 33 N. H. 310; *Springer v. Dwyer*, 50 N. Y. 19; *Bathgate v.*

*Haskin,* 59 N. Y. 533; *Newell v. Salmon,* 22 Barb. ( N. Y.) 647; *Wagner v. Stocking,* 22 Ohio St. 297; *Guggenheim v. Rosenfeld,* 9 Baxt. (Tenn.) 533; *Downer v. Dana,* 17 Vt. 518; *Brundridge v. Whitcomb,* 1 D. Chip. (Vt.) 180; *Wortman v. Yost,* 22 Gratt. (Va.) 595.

It has also been held upon high authority that where a surety is sued alone upon an obligation that is joint and several he may set off a debt due from the plaintiff to him individually, although this right has been denied. But although the principal debtor may set off a debt due from the plaintiff to him alone, when sued jointly with his surety, the surety cannot take advantage of such debt unless he pleads the insolvency of the principal debtor; and in this case Ball does not pretend that the Capitol National Bank owes him individually, or that the Bank of Meridian is insolvent. No reason appears in the record why Ball may not, in an action at law, recover from the Bank of Meridian any sum which he may be compelled to pay upon the note. Although he may be interested in the bank, he cannot protect its rights in an action in his individual name. If it is true that the debt is due from the Bank of Meridian and not from Ball, and he desires that its banace in the Capitol National Bank be set off against the debt represented by the note, it must ask for such relief. Every action or defense must be prosecuted in the name of the real party in interest, and where one having a legal right sits indifferently by and fails to enforce it, a stranger will not be permitted to do so for him, unless he may personally suffer loss if such right is neglected, and even then it must be an extreme case and the circumstances, under the rules of law,

will necessarily be exceptional. No such condition exists in the case before us; and so are the authorities.

In the case of *Becker v. Northway* (Minn) 46 N. W. 210, it is said:

"In an action against a surety, if the principal be a party and he be insolvent, the surety may set off against the debt sued on, a debt due from the plaintiff to the principal debtor."

In *Hiner et al. v. Newton,* 30 Wis. 640, the law is stated in the syllabus in the following language:

"In an action by the payee against the accommodation endorser of a note, given for machinery to be manufactured for the maker, defendant cannot in law counterclaim for damages to the maker, arising out of defective construction of such machinery."

"If the answer should allege that the maker is insolvent, and that it is necessary for the protection of defendant to have the benefit of such counterclaim, it seems that the court might order the maker to be brought in for the purpose of adjudicating such counterclaim.

"But an averment in the answer that the maker of the note (the principal debtor) is 'of doubtful responsibility' for a demand of so large an amount as that for which defendant has become liable, is not sufficient."

The case of *Dolph v. Rice,* 21 Wis. 597 (Star page 590) is of peculiar interest. One Rice, executed a note in his own name in settlement of an open account due from his wife to plaintiff. The defendant, in payment of this note and another open account against Mrs. Rice, gave plaintiff his own check, on which suit was brought. The defendant pleaded want of consideration; that the note and check were executed as agent for his wife and that she was the real

party in interest, all of which the plaintiff at the time well knew, and then pleaded a setoff by reason of an open account due from the plaintiff to his wife.

The court denied the right and then said that whether. if the defendant had pleaded insolvency of the plaintiff and that he was unable to respond in damages would have furnished any ground for equitable relief, was not raised by the pleadings; but even then, said the court, if under such allegations, such facts would authorize such an offset, it could only be had if Mrs. Rice were a party to the action.

It will be observed that the pleadings filed in the case at bar not only fail to allege the insolvency of the principal debtor, but also fail to allege the insolvency of the Capitol National Bank; and although the Capitol National Bank was in the hands of a receiver, for aught the court knows judicially there are ample funds from which to discharge all of its obligations.

Mr. Justice McAdam, in the case of *Wood v. Davis*, 15 N. Y. Sup. 554, said:

"Where an agent is liable on a contract made for the benefit of a third person, by reason of not disclosing his agency, he cannot avail himself of a debt due by the plaintiff to such third person as a setoff."

We find many authorities bearing upon the questions involved in this case, but few of them except where controlled by statute, are squarely in point. However, after diligent research, we have concluded that the demurrer to the evidence was improperly overruled and that judgment should have been in favor of the cross-petitioner on the note. Equity will not grant relief until it is first shown that the

actions at law, both affirmative and defensive, are insufficent. Even in actions in the nature of a creditor's bill, judgment must first be obtained and execution returned "no property found" before relief in equity will be granted; but, upon the theory that equity delights in doing full justice, the courts which permit a surety to plead an offset in favor of the principal debtor, extend that right, upon pleading and proving the insolvency of such principal debtor, for it would not be equitable to compel the surety to pay out his own money for the debt of another when he could not recover it back, if the money or assets of the real debtor can be subjected to such payment.

For the reasons stated, the judgment of the lower court is hereby reversed, and the case remained with instructions to proceed in conformity with the opinion.

Costs taxed to appellee.

Pancoast, J., who presided in the court below, not sitting; Burford C. J., not sitting; Hainer, J., concurring in the judgment, but not in all of the reasons assigned therefor; all the other Justices concurring.