## RANKIN v. BLAINE COUNTY BANK.

No. 1758, Okla. T.   Opinion Filed January 21, 1908.

(93 Pac. 536.)

1.   EVIDENCE—Parol—Party in Interest—Contract by Agent—
     Action by Principal.   A principal may maintain an action on a
     written contract made by his agent in his own name, and evi-
     dence may properly be admitted to show that the principal was
     the real party in interest, notwithstanding the rule of law that
     an agreement reduced to writing may not be contradicted or
     varied by parol evidence.

2.   BANKS AND BANKING—Insolvency—Rights of Depositor-Bor-
     rower—Set-off.   Where a bank borrows money from another
     bank, and authorizes its cashier in his own name to pledge
     promissory notes taken in the name of the cashier, but belonging
     to the borrowing bank, as security for the loan, and the loaning
     bank fails, having on deposit money belonging to the borrowing
     bank in excess of the amount borrowed on the pledged promis-
     sory notes, the borrowing bank may institute suit in its own
     name against the receiver of the failing bank for the recovery of
     the promissory notes pledged, and in such suit, upon proper
     allegation and proof, is entitled to the return of the notes, and
     to have the sum borrowed on them set off against the amount
     on deposit.

(Syllabus by the Court.)

*Error from the District Court, Logan County; before J. L. Pan-
coast, Judge.*

Action by the Blaine County Bank against George C. Rankin,
receiver of the Capitol National Bank of Guthrie. Judgment for
plaintiff, and defendant brings error. Affirmed.

*Flynn & Ames,* for plaintiff in error.
*Dale & Bierer,* for defendant in error.

KANE, J.   This is an action brought by the Blaine County
Bank, a corporation, against J. A. Willoughby, receiver of the
Capitol National Bank of Guthrie, Okla., for the return of cer-
tain promissory notes deposited by the Blaine County Bank with

the Capitol National Bank as collateral, to secure loans made by the Capitol National Bank to the Blaine County Bank. Since the cause was filed in this court, George C. Rankin as receiver was substituted as plaintiff in error, in lieu of Mr. Willoughby.

The plaintiff in error states the facts in his petition below, as follows:

"That during the time said Capitol National Bank was engaged in the banking business said plaintiff deposited with said bank, at various times, sums of money, and that at the date said Capitol National Bank failed and closed its doors it had on deposit in said bank, to the credit of plaintiff, the sum of $11,-914.89, and on said date also had with said Capitol National Bank the following described notes, to wit: [Here follows description of notes.] Plaintiff states that said notes were placed with the Capitol National Bank under an arrangement and agreement with one Charles E. Billingsley, at that time president of said bank, as security for money advanced to and placed by the Capitol National Bank to the credit of plaintiff herein; that at the time, to wit, April 4, 1904, when said Capitol National Bank ceased doing business, said above-described notes were held by the said Capitol National Bank to secure an advancement made by said last-named bank to the plaintiff bank in the sum of $3,224.25, which sum of money had theretofore been so advanced and placed to the credit of said plaintiff bank upon the books of the Capitol National Bank, and which said sum of money made and constituted a part of the $11,914.89, which the plaintiff bank had on deposit with said Capitol National Bank at the time said Capitol National Bank ceased doing business; and at the time said notes above described were placed in said Capitol National Bank it was agreed by and between the Blaine County Bank, plaintiff herein, and Charles F. Billingsley, as president of the Capitol National Bank, that said notes should be returned to the plaintiff herein as the same became due and payable, and when so returned charged to the account of plaintiff herein upon the books of said Capitol National Bank. Plaintiff alleges that when said Capitol National Bank failed, and the defendant receiver had been appointed and qualified to take charge of the assets of said Capitol National Bank, plaintiff demanded of said receiver a return of said notes so left in said Capitol National Bank, as

aforesaid, and that the amount therof, to wit, the sum of $3,-224.25, be charged against the deposit, which said plaintiff had in said Capitol National Bank at the time it failed and ceased doing business, which demand has been by the receiver refused, and said receiver has failed to comply with the demand of plaintiff, and is threatening to, and will, if not restrained, attempt to collect the said notes from the makers thereof, greatly to the injury and detriment of plaintiff."

The following, taken from the statement of defendant in error, in its brief, fairly states the details of the arrangement between the banks, as shown by the evidence:

"These notes had been taken by the Blaine County Bank in the name of Ed. S. Wheelock, who was then acting as the cashier of the Blaine County Bank, and had been sent to the Capitol National Bank under a certain arrangement and agreement between the officers of the Blaine County Bank and the Capitol National Bank, whereby the Capitol National Bank was to advance, for the benefit of the Blaine County Bank, the face value of the notes at an agreed rate of interest—at 8 per cent. per annum—during the time such advancements were to run. Under this arrangement the Capitol National Bank advanced the money to Ed. S. Wheelock. Ed. S. Wheelock immediately transferred it to the Blaine County Bank."

The following is a further statement of the facts in relation to these notes taken from the brief of plaintiff in error:

"Five of the notes in question are payable to the order of Ed. S. Wheelock at the Blaine County Bank, and are indorsed 'payment guaranteed, Ed. S. Wheelock.' The remaining four notes are payable to the order of Ed. S. Wheelock, cash, and are likewise indorsed 'payment guaranteed, Ed. S. Wheelock.'"

These notes, it seems from the evidence, represented loans made by the Blaine County Bank to some of its customers out of the funds of the bank. The plaintiff in error, defendant below, tried his case on the theory that, at the time of the suspension of the Capitol National Bank, the Blaine County Bank had no right, title, or interest in and to the notes; that the notes were then, and are now, the property of the Capitol National Bank; that the Capitol National Bank purchased them from Ed. S. Whee-

lock, and they came into the hands of the receiver as part of the assets of the bank. The court submitted the question of the ownership of the notes to the jury, and the jury found as follows:

"We, the jury in the above-entitled cause, do, upon our oaths, find that the notes in controversy in this cause were placed in the Capitol National Bank as security for loans and advancements to the plaintiff."

Thereupon the court rendered judgment in favor of the plaintiff, from which judgment the defendant appealed to this court.

It is practically conceded by counsel for both parties that, if evidence was properly admissible for the purpose of proving that the Blaine County Bank was the owner of the paper and pledged it to the Capitol National Bank as collateral for a loan made by the Capitol National Bank to the Blaine County Bank, said Blaine County Bank is entitled to the relief it prays for in its petition. But counsel for plaintiff in error, to avoid this conclusion, contends that:

"(1) The court erred in refusing to receive evidence as to the general custom of banks in rediscounting negotiable paper. (2) The court erred in submitting special interrogatories to the jury, because such interrogatories called for conclusions from the jury and not for facts. (3) The court erred in rendering judgment in favor of the defendant in error, because (a) the promissory notes in question and the indorsement thereon show that such notes were the property of Ed. S. Wheelock at the time of their transfer to the Capitol National Bank, and the court had no power to take into consideration parol evidence for the purpose of changing, varying or contradicting such instruments; (b) such judgment was not based upon any general verdict of the jury."

There seems to be no serious contention as to the agreement entered into between the two banks. Wheelock and Billingsley substantially agreed in their statement of facts, no matter how much they may differ from each other in their conclusions of law. Evidence of a custom alone, unsupported by any other

evidence, certainly could not properly be admitted to upset this undisputed contract between the parties authorized to act for the two banks. If such evidence was admitted, it would not join an issue of fact sufficient to send the case to the jury, or justify the court to find contrary to the otherwise uncontradicted testimony supporting the contract. In the case at bar there really was no issue of fact joined by the evidence to be submitted to the jury. The court probably should have taken the case from the jury; but the mere fact that it presented a certain question to the jury, and the jury made a finding that was entirely consistent with the undisputed evidence, does not, to our mind, constitute prejudicial error, if error at all. If the evidence on this point was properly admitted, the court or the jury could possibly come to no other conclusion than the one the jury arrived at, and whether the finding was a finding of fact or a conclusion of law it could in no way injure the plaintiff in error. There being no issue of fact joined by the evidence, it must necessarily follow that a verdict in this case, either special or general, was not necessary, and the record in this court may be examined as though no jury had been impaneled and sworn.

We now come to the assignment of error that reaches the merits of the case:

"The court erred in rendering judgment in favor of the defendant in error, because the promissory notes in question and the indorsements thereon show that such notes were the property of Ed. S. Wheelock at the time of their transfer to the Capitol National Bank, and the court had no power to take into consideration parol evidence for the purpose of changing, varying, or contradicting such instruments."

We have examined all of the authorities cited by the parties to this suit on the point raised by this last assignment, and believe that the principles governing this case are fairly deducible from them. The doctrine that parol evidence is not admissible to vary the legal import of a written agreement as a general proposition of law is well settled. But counsel for defendant in error

argue they are not seeking to vary or change the terms of the promissory notes in question, but are only seeking to show who the principal was in the transaction carried on in relation to them by Ed. S. Wheelock and the Capitol National Bank; that Ed. S. Wheelock, in these transactions, was acting for the defendant in error, and that a principal may maintain an action on a written contract made by his agent in his own name; and that evidence may properly be admitted to show that the principal is the real party in interest, notwithstanding the rule of law that an agreement reduced to writing may not be contradicted or varied by parol evidence. This contention seems to be well supported by the decisions.

"The contract of the agent is the contract of the principal, and he may sue or be sued thereon, though not named therein; and notwithstanding the rule of the law that an agreement reduced to writing may not be contradicted or varied by parol, it is well settled that the principal may show that the agent who made the contract in his own name was acting for him. This proof does not contradict the writing; it only explains the transaction. But the agent who binds himself will not be allowed to contradict the writing by proving that he was contracting only as agent, while the same evidence will be admitted to charge the principal. 'Such evidence [says Baron Park] does not deny that the contract binds those whom on its face it purports to bind; but shows that it also binds another, by reason that the act of the agent is the act of the principal.'" *Ford v. Williams,* 21 How. (U. S.) 287, 16 L. Ed. 36

Applying the rule above laid down to the case at bar, it would seem that the Capitol National Bank might have sued Wheelock on the notes, and that Wheelock would not be allowed to contradict the writing by proving that he contracted only as agent; but while this evidence would be inadmissible in the suit against Wheelock, it would be admissible to charge the principal, if the Capitol National Bank brought suit on the notes against the Blaine County Bank.

It seems clear, from an analysis of the foregoing case, that

the receiver of the Capitol National Bank might have brought suit against either Wheelock or the Blaine County Bank, and that in the event suit was brought against the Blaine County Bank parol evidence would have been admissible to show that the Blaine County Bank was liable as principal. Why does not the same rule apply in this case where the Blaine County Bank brings suit to recover possession of the notes? We think it does, and it was not error for the court below to admit such evidence.

The only remaining question in the case is the right of the Blaine County Bank to have the amount it owed the Capitol National Bank on these notes set off as a credit in its favor against the amount the Capitol National Bank, at the time of its failure, owed the Blaine County Bank. On this proposition the case of *Scott v. Armstrong*, 146 U. S. 499, 13 Sup. Ct. 148, 36 L. Ed. 1059, is strongly in point. The facts in the case of *Scott v. Armstrong, supra*, as stated by Mr. Chief Justice Fuller, are briefly as follows:

"No. 53 was an action brought by David Armstrong, receiver of the Fidelity National Bank of Cincinnati, Ohio, against Levi Scott and the Farmers' & Merchants' State Bank, in the Circuit Court of the United States for the Southern District of Ohio, upon a promissory note of $10,000, dated at Cincinnati on June 6, 1887, payable ninety days after date, at said Fidelity Bank, with interest after maturity at the rate of 8 per cent. per annum, signed by Scott and indorsed by the Farmers' Bank to the order of the Fidelity Bank. The defendant Scott was the cashier of his codefendant, and pleaded that he signed the note for the accommodation of the banks under an agreement that he should not be looked to for its payment. The Farmers' Bank made the same averments as to Scott, and pleaded a set-off to the amount of $8,809.94, as arising on certain facts, in substance as follows: That the Fidelity Bank lent the Farmers' Bank the $10,000 at a discount at the rate of seven per cent. per annum, for ninety days, under an agreement that the money so borrowed, less the discount, should be placed to the credit of the Farmers' Bank on the books of the Fidelity Bank; that the note in suit was executed accordingly, dated and discounted on June 6, 1887,

and the proceeds, $9,819.17, were placed to the credit of the Farmers' Bank, upon the books of the Fidelity Bank, to meet any checks or drafts of the Farmers' Bank, and to pay the note when it became due; that afterwards, and before June 20th, the Farmers' Bank drew against the deposit the sum of $1,009.23, and the balance, $8,809.94, remained to the credit of the defendant to meet the note, and was so to its credit at the time the receiver was appointed; that upon the maturity of the note and before suit was brought defendant tendered to the receiver the sum of $1,190.06, the balance due on the note; and that the tender had since that time been kept good, and the money was now brought into court."

On the above state of facts, which are, substantially, the same in principle as the facts in the case at bar, the court held that Scott and the Farmers' & Merchants' Bank did not have a legal right to a set-off, yet equity would afford that relief.

The Oklahoma Code of Civil Procedure abolishes the distinction between actions at law and suits in equity, requires all actions to be brought in the name of the real party in interest, and permits all defenses, counterclaims, and set-offs, whether formerly known as legal or equitable, to be set up therein, and the court entertaining such actions may give all the relief, either legal or equitable, the parties show themselves entitled to. It then does no violence to our practice or procedure to hold that where a bank borrows money from another bank and authorizes its cashier in his own name to pledge promissory notes, taken in the name of the cashier, but belonging to the borrowing bank, as security for the loan, and the loaning bank fails, having on deposit money belonging to the borrowing bank in excess of the amount borrowed on the pledged promissory notes, the borrowing bank may institute suit in its own name against the receiver of the failing bank for the recovery of the promissory notes pledged, and in such suit, on proper allegation and proof, is entitled to the return of the notes, and to have the sum borrowed on them set off against the amount on deposit.

Counsel for plaintiff in error, in their reply brief, state that,

"All of the issues in this case are settled by a decision of the Supreme Court of the territory of Oklahoma in the case of *Willoughby v. Ball*, 18 Okla. 535, 90 Pac 1017." We think there are a good many points of difference in the two cases. Mr. Justice Burwell, who wrote the opinion in *Willoughby v. Ball*, 18 Okla. 535, 90 Pac. 1017, distinguishes it from *Scott v. Armstrong*, 146 U. S. 499, 13 Sup. Ct. 148, 36 L. Ed. 1059, and we are of the opinion that this part of Justice Burwell's opinion also points out the difference between *Willoughby v. Ball* and the case at bar. *Willoughby v. Ball, supra,* was a suit commenced by Ball, president of the Bank of Meridian, in his individual capacity, alleging that the Capitol National Bank of Guthrie closed its doors and ceased to do business on or about April 4, 1904; that on or about March 12, 1904, the plaintiff Ball, representing the Bank of Meridian, borrowed from the Capitol National Bank the sum of $2,000 due April 12, 1904, for which he executed his promissory note, which drew 2 per cent, per annum, and the proceeds of the loan were placed to the credit of the Bank of Meridian, and were never withdrawn from the Capitol National Bank; that the plaintiff was authorized by the board of directors of the Bank of Meridian to make this loan in his own name. That the fact that the loan was not made for the benefit of Ball, but for the benefit of the Bank of Meridian, was made known to Mr. Billingsley, the president of the Capitol National Bank, at the time loan was made. That on April 12, 1904, eight days after the Capitol National Bank failed, the Bank of Meridian requested the national bank examiner, who was then in charge of the Capitol National Bank. to charge said note of Ball's to the account of the Bank of Meridian, canceling said note and surrender the same, and that the Bank of Meridian had on deposit, at said time, with the Capitol National Bank, the sum of $2,975.25, but that the bank examiner refused to make said charge and surrender said note. The petition then prays for a cancellation of the note, and that the account of the bank of Meridian and the amount of

the note be offset against it.   The defendant, as receiver, entered his appearance and filed an answer, which was a general denial, and a cross-petition praying for judgment against Ball on the note.   The Bank of Meridian, although it entered its appearance, filed no pleadings in the case.   The plaintiff Ball then filed a reply which was a general denial, and then pleaded affirmatively as a defense to the cross-petition of the defendant on the note the agreement between him and the Capitol National Bank wherein it was understood that the loan was to the Bank of Meridian and not to Ball.   The court held that the foregoing statement of facts did not constitute a cause of action in favor of Ball against the receiver, and that an objection to the introduction of evidence should have been sustained, mainly for the reason that the petition shows on its face that Ball was not the real party in interest.   Discussing this branch of the case, Justice Burwell says:

"The Bank of Meridian, although made a party of the suit, had filed no pleading and asked for no relief.  Under the plaintiff's own allegations in his pleadings the deposit in the Capitol National Bank was not his, but was due to the Bank of Meridian."

The above quotation clearly shows that the reason that the Supreme Court held that the demurrer should be sustained to Ball's evidence was that Ball, although he was an officer of the Bank of Meridian, could not, in his individual capacity, claim a set-off for it against the receiver; but that the ruling of the court would have been different if the suit was brought in the name of the Bank of Meridian, as this one is brought in the name of the Blaine County Bank, is clearly gathered from another statement by Mr. Justice Burwell in the Ball case:

"Although he may be interested in the bank, he cannot protect its right in an action in his individual name; if it is true that the debt is due from the Bank of Meridian and not from Ball, and it desires that its balance in the Capitol National Bank be set off against the debt represented by the note, it must ask for such relief. Every action or defense must be prosecuted in the name of the real party in interest, and where one having a legal right sits in-

differently by, and fails to enforce it, a stranger will not be permitted to do so for him."

In relation to Ball's rights under proper pleading and proof, the court held that:

"While a principal debtor may set off a debt due from the plaintiff to him in an action against him and his surety jointly, the surety cannot do so on his own motion, unless he shows the insolvency of his principal, and his inability to obtain a relief either in an action brought by him, or as a defense to an action on the note; and, even then, the principal debtor should be made a party to the suit."

In the case at bar the Blaine County Bank is prosecuting its own suit against the receiver, and it desires that the amount it owes the Capitol National Bank be set off against its deposits, and asks for such relief. The court is of the opinion that it is entitled to the relief prayed for, and, finding no material error in the proceedings of the court below, it follows that the judgment of the court below be affirmed. It is so ordered

Hayes, J., who was disqualified, not sitting; the other Justices concur.